IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:19 CV 263

| | |
|---|---|
| ANDY-OXY CO. INC., )<br>)<br>Plaintiff, )<br>v. )<br>)<br>MESSER, LLC, )<br>)<br>Defendant. )<br>_____ ) | MEMORANDUM AND<br>RECOMMENDATION |

This matter is before the Court on Defendant's Motion to Dismiss (Doc. 4), which has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). Having carefully considered the parties' arguments, the record, and applicable authority, the undersigned respectfully recommends that the Motion be denied.

I. Procedural Background

Plaintiff filed this matter in the Superior Court of Buncombe County on August 14, 2019. Defendant removed it to this Court on September 17, 2019.

Defendant filed its Motion to Dismiss on September 23, 2019. Plaintiff responded and Defendant replied.

## II. Factual Background

Plaintiff Andy–Oxy Co, Inc. ("Plaintiff") is a North Carolina corporation with its principal place of business in Buncombe County. It is in the business of selling and distributing welding supplies and gases. (Doc. 1-1) at ¶¶ 1-2.

Defendant Messer, LLC ("Defendant") is headquartered in Germany and is in the business of selling bulk gases to distributors around the world, including in North Carolina. Id. at ¶¶ 3-4.

Plaintiff alleges that, in May of 2006, it entered into a distributor agreement ("Agreement") with non-party "BOC Gases"[1] through which Plaintiff agreed to purchase all of its required bulk gases. Id. at ¶¶ 6-8.

Plaintiff contends that the document attached as Exhibit A to the Complaint is a copy of the Agreement. Id. at ¶ 7. Defendant does not admit that Exhibit A is a true and accurate copy of the Agreement but accepts the document for purposes of its Motion to Dismiss. (Doc. 5) at 1, n.1.[2]

On the Agreement, the signature block for Plaintiff is dated May 9, 2006 and appears to bear the signature of Plaintiff's "VP/GM". The signature block

---

[1] This entity is referenced in the Agreement as "BOC GROUP, INC. through its BOC GASES DIVISION."

[2] The Court may consider the Agreement as it is integral to and explicitly relied upon by the Complaint. Copeland v. Bieber, 789 F.3d 484, 490 (4th Cir. 2015) (citing Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir.1999)).

2

for BOC is dated June 5, 2006 and appears to bear the signature of BOC's Vice President. (Doc. 1-1) at 8.

The Agreement is typed with the exception of the following provision, which is handwritten below the signature blocks ("Handwritten Note"):

> In the event BOC Gases is sold at any time during the length of this agreement, Andy-Oxy Co. hereby has the right to cancel this agreement with 90 days notice.

Two hand-drawn lines appear near the Handwritten Note. One bears initials; the other is a blank line with an "X" at the beginning of the line. Id.

At some point after the Agreement was entered, BOC was sold to Linde AG[3] and later acquired by Defendant on or about March 1, 2019. Id. at ¶ 10.

On June 18, 2019, Plaintiff sent a letter to Defendant attempting to exercise "its right to terminate" the Agreement.[4] Id. at ¶ 11.

That same day, Defendant's Distributor Sales Manager sent an e-mail message in which he stated, "I think it is a 90 day cancellation period so effective date would be 90 days from today." Id. at ¶ 12.

However, on June 24, 2019, Defendant sent Plaintiff a letter rejecting Plaintiff's attempted termination and stating that the clause allowing early termination was unenforceable since "such termination right was explicitly

---

[3] The Complaint does not provide any further details regarding this acquisition.

[4] A copy of this letter is not in the record.

tied to the BOC acquisition [by Linde] which was finalized in September of 2006." Id. at ¶ 13.

## III. Legal Standard

In a motion made pursuant to Rule 12(b)(6), the central issue is whether the complaint states a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In that context, the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 192.

The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192. That is, while "detailed factual allegations" are not required, the complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); accord Consumeraffairs.com, 591 F.3d at 255.

Ultimately, the well-pled factual allegations must move a plaintiff's

4

claim from possible to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256. This does not "impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the] agreement. Twombly, 550 U.S. at 556.

## IV. Discussion

### A. Jurisdiction

Plaintiff's Complaint states a single claim – a request for a declaratory judgment regarding the early termination of the Agreement.

The Fourth Circuit has explained that "a federal court may properly exercise jurisdiction in a declaratory judgment proceeding when three essentials are met: (1) the complaint alleges an "actual controversy" between the parties "of sufficient immediacy and reality to warrant issuance of a declaratory judgment;" (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction." Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 592 (4th Cir. 2004) (citations omitted).

These requirements have been met in this case. The Complaint alleges that there is an actual controversy between the parties relating to the interpretation of the Agreement and the effectiveness of Plaintiff's notice of

5

early termination. (Doc. 1-1) at ¶ 16. Further, because the parties are diverse and the amount in controversy appears to be in excess of $75,000, diversity jurisdiction exists.[5]

### B. Choice of Law

"In a diversity case, a district court applies the conflict-of-law rules of the state where it sits." DiFederico v. Marriott Int'l, Inc., 714 F.3d 796, 807 (4th Cir. 2013) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). "Under North Carolina choice of law rules, the interpretation of a contract is governed by the law of the place where the contract was made." Worley Claims Servs., LLC v. Jefferies, No. 3:18-CV-00547-KDB-DCK, 2019 WL 6794496, at *4 (W.D.N.C. Dec. 12, 2019) (internal quotation and citation omitted). However, "where the contracting parties have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect." Synovus Bank v. Coleman, 887 F. Supp. 2d 659, 668 (W.D.N.C. 2012) (quoting Tanglewood Land Co. v. Byrd, 299 N.C. 260, 262 (1980)).

Here, the Agreement includes a forum-selection clause which requires the application of New Jersey law. Defendant argues that this clause is

---

[5] Plaintiff is a North Carolina corporation with its principal place of business in Buncombe County and Defendant's sole member, Messer North America, Inc., is incorporated in Delaware and has its principal place of business in New Jersey. See (Docs. 1-1 & 9).

6

enforceable, and Plaintiff does not oppose this position. Accordingly, the undersigned will apply the substantive law of New Jersey for purposes of Defendant's instant Motion.

### C. Defendant's Arguments

In support of its Motion, Defendant argues that the Handwritten Note is unenforceable and may not properly be considered a term of the Agreement as it was not accepted by a duly authorized representative of BOC either at the time of the creation of the Agreement or subsequently through the email message from Defendant's Distributor Sales Manager.

Plaintiff counters that it was not necessary for BOC's representative to initial the Handwritten Note specifically and that BOC accepted the Handwritten Note nonetheless.

#### 1. The Handwritten Note as an Additional Term

N.J.S.A. § 12A:2-207 (Additional Terms in Acceptance or Confirmation) provides as follows:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

7

> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>
>> (a) the offer expressly limits acceptance to the terms of the offer;
>>
>> (b) they materially alter it; or
>>
>> (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
>
> (3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act.
>
> N.J.S.A. § 12A:2-207.[6]

In addition, Paragraph 20 (General Provisions) of the Agreement reads in pertinent part as follows:

> This Agreement shall not be binding upon BOC until it is signed by an authorized representative of BOC. The provisions of this Agreement along with the

---

[6] N.J.S.A. 12A:2-207 codified U.C.C. section 2-207 which applies in circumstances commonly known as a "battle of the forms." <u>Jermax, Inc. v. Baosteel Am., Inc.</u>, No. A-5204-08T1, 2009 WL 4547576, at *3 (N.J. Super. Ct. App. Div. Dec. 4, 2009). Though there is only one "form" in this case, Plaintiff has not suggested that this statute is inapplicable. See e.g., <u>Klocek v. Gateway, Inc.</u>, 104 F. Supp. 2d 1332, 1339 (D. Kan. 2000) ("Disputes under § 2–207 often arise in the context of a "battle of forms," *see, e.g., Diatom, Inc. v. Pennwalt Corp.,* 741 F.2d 1569, 1574 (10th Cir.1984), but nothing in its language precludes application in a case which involves only one form.").

> Rider(s) attached hereto constitute the entire agreement between BOC and the Distributor relating to the matters covered by the Agreement.[7]
>
> ***************************
>
> No modification or waiver of any of said provisions shall be binding upon BOC unless set forth in writing and accepted by a duly authorized representative of BOC, and no modification of any of said provisions shall be effected by the acknowledgment or acceptance by BOC of any purchase order, acknowledgment or other form submitted by the Distributor containing different or additional provisions.[8]

(Doc. 1-1) at 8.

Defendant contends that, pursuant to N.J.S.A. § 12A:2-207(2)(a), Paragraph 20 expressly limited the acceptance of the Agreement to its terms. That is, in Defendant's view, the Handwritten Note is enforceable "only if it was added to the [Agreement] by the Paragraph 20 process." (Doc. 5) at 8.

The undersigned, however, is not persuaded by this argument. The Complaint is silent as to how and why the Agreement was created in the first instance, including whether it was meant to be an offer or the confirmation of terms upon which the parties had previously agreed. See N.J.S.A. § 12A:2-207, Comment 1 ("This section is intended to deal with two typical situations. The

---

[7] Defendant refers to this section as a merger clause. (Doc. 5) at 2-3.

[8] Defendant refers to this section as an anti–modification clause. (Doc. 5) at 3.

one is the written confirmation, where an agreement has been reached either orally or by informal correspondence between the parties and is followed by one or both of the parties sending formal memoranda embodying the terms so far as agreed upon and adding terms not discussed. The other situation is offer and acceptance, in which a wire or letter expressed and intended as an acceptance or the closing of an agreement adds further minor suggestions or proposals . . ..").

In addition, assuming that the form Agreement (prior to being executed by either Plaintiff or BOC) should be considered an offer from BOC, it is not clear that Paragraph 20 is correctly construed as an attempt, pursuant to N.J.S.A. § 12A:2-207(2)(a), to limit Plaintiff's acceptance to the terms of that offer. Paragraph 20 states that "this Agreement along with the Rider(s) attached hereto constitute the entire agreement" between BOC and Plaintiff, that the modification or waiver of any provision is not binding on BOC "unless set forth in writing and accepted by a duly authorized representative of BOC," and that the Agreement's provisions will not be modified by BOC's acknowledgment or acceptance of any purchase order, acknowledgment or other form submitted by Plaintiff that contains different or additional provisions. Paragraph 20, though, does not contain language that specifically references a limitation of Plaintiff's acceptance, see e.g., SSAB Alabama, Inc. v. Kem-Bonds, Inc., No. CV 17-0175-WS-C, 2017 WL 6612778, at *5 (S.D. Ala.

10

Dec. 27, 2017) (paragraph in purchase order specifying "[a]cceptance of this Order is expressly limited to the terms and conditions set forth in this Order" effectively limited acceptance under Ala. Code § 7-2-207(2)(a)), and Defendant has not cited authorities that have interpreted language like that appearing in Paragraph 20 as providing such a limitation. Paragraph 20 could be read alternatively as an attempt to establish a framework by which future modifications may be made after the terms of the Agreement have been agreed upon, not to limit the process by which the terms of the Agreement are determined at the outset.

### 2. Acceptance

Defendant's arguments regarding acceptance are essentially twofold. Defendant contends that the lack of an initial or other mark on the hand-drawn signature line near the Handwritten Note demonstrates that BOC did not accept the Handwritten Note at the time the Agreement was entered and that the subsequent email message from Defendant's Distributor Sales Manager did not constitute such an acceptance by Defendant.

In this regard, Defendant cites Bell Atl. Corp. v. Twombly, 550 U.S. 544, 548–49 (2007) and argues that Plaintiff's assertion that the Handwritten Note was a provision of the Agreement is a legal conclusion, not an allegation of fact. Defendant notes that "here, unlike in Twombly, the issue is whether specific terms were part of the agreement, not whether there was an agreement at all,"

but contends that Plaintiff's allegations are deficient nonetheless. (Doc. 7) at 2.

Though the allegations of the Complaint could be more detailed, they do contain factual allegations that, if true, would support Plaintiff's position that the Handwritten Note was part of the Agreement. The Complaint describes correspondence in June of 2019 from Defendant's Distributor Sales Manager referencing the effective date of the termination as well as subsequent correspondence from Defendant arguing that Plaintiff's attempt to exercise its termination right was untimely (not that the Handwritten Note was never accepted by BOC).

Further, the record contains other information – namely a purported copy of the Agreement itself – about the possible terms. See Brave Mar. Corp., Inc. v. Glob. Mktg. Sys., Inc., 661 F. App'x 249, 251 (4th Cir. 2016) ("In the event of conflict between the bare allegations of the complaint and any exhibit attached to the complaint, the exhibit prevails.") (quoting S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 182 (4th Cir. 2013)).

One plausible interpretation of the information now before the Court is that Plaintiff's representative received the form contract from BOC, inserted the Handwritten Note, and executed the document on or about May 9, 2006, and that the representative of BOC executed the document subsequently on

June 5, 2006 but did not either initial or strike through the Handwritten Note. Under such a scenario, even if, as Defendant argues, Paragraph 20 did place limitations on Plaintiff's acceptance, BOC could be considered as having accepted the Handwritten Note in compliance with Paragraph 20.

Whether the events in question actually unfolded in this manner is unknown and the undersigned expresses no opinion as to that issue. However, as the information currently of record, when read in the light most favorable to Plaintiff, presents at least one plausible scenario in which the Handwritten Note could be considered enforceable, this matter should be allowed to proceed.

## V. Recommendation

Accordingly, for the reasons stated, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss (Doc. 4) be **DENIED**.

Signed: March 6, 2020

*W. Carleton Metcalf*
W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).